UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LYNNE MARIE OTWELL,

                            Plaintiff,

v.

                        Case # 17-CV-306-FPG

                        DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

## INTRODUCTION

Lynne Marie Otwell brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On August 13, 2013, Otwell protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 143-46. She alleged disability since October 11, 2012, due to a back injury, ductal carcinoma of the breast, bilateral mastectomy and reconstruction, an oophorectomy, cervical degenerative disc disease radiculopathy, diverticulosis, a pulmonary

---

[1] References to "Tr." are to the administrative record in this matter.

1

embolism, gallbladder removal, a Baker's cyst on the knee, macular degeneration, breast cancer with chemotherapy and radiation, mental stress, and depression. Tr. 168. On February 8, 2016, Otwell and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge William M. Weir ("the ALJ"). Tr. 39-80. On September 15, 2016, the ALJ issued a decision finding that Otwell was not disabled within the meaning of the Act. Tr. 17-25. On February 10, 2017, the Appeals Council denied Otwell's request for review. Tr. 1-6. Thereafter, Otwell commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Otwell's claim for benefits under the process described above. At step one, the ALJ found that Otwell had not engaged in substantial gainful activity since the alleged onset date. Tr. 19. At step two, the ALJ found that Otwell has the following severe impairments: degenerative disc disease, obesity, and contractions due to breast reconstruction status post-surgery. Tr. 19-21. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 21.

Next, the ALJ determined that Otwell retains the RFC to perform light work,[2] but she can only frequently reach and occasionally reach overhead. Tr. 21-23. At step four, the ALJ relied on the VE's testimony and found that Otwell cannot perform her past relevant work as a cook manager. Tr. 23-24. At step five, the ALJ relied on the VE's testimony and found that Otwell can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 24-25. Specifically, the VE testified that Otwell could work as a short order cook and cafeteria attendant. Tr. 25. Accordingly, the ALJ concluded that Otwell was not "disabled" under the Act. *Id.*

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

**II.     Analysis**

Otwell argues that remand is required because the ALJ failed to develop the record.[3]  ECF No. 10-1 at 16-20; ECF No. 14.  Specifically, Otwell asserts that the record lacked treatment notes from her social worker Nancy Kells.  *Id.*  The Commissioner maintains that the record was well-developed as to Otwell's mental impairments and that the failure to obtain Ms. Kells's records does not warrant remand.  ECF No. 12-1 at 16-21.

The ALJ has an affirmative duty to develop the administrative record due to the "non-adversarial nature of a benefits proceeding."  *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).  Specifically, the ALJ must "make every reasonable effort" to develop a claimant's "complete medical history" for at least the 12 months before the month in which the claimant applied for benefits.  20 C.F.R. § 404.1512(b)(1).  "Every reasonable effort" means that the ALJ will make an initial request for evidence from the medical source and, if the evidence is not received, will make one follow-up request between 10 and 20 calendar days after the initial request.  *Id.* at § 404.1512(b)(1)(i).

In the mental health context, the SSA promises to "make every reasonable effort to obtain all relevant and available medical evidence about [the claimant]'s mental impairment(s), including its history, and any records of mental status examination, psychological testing, and hospitalizations and treatment."  *See* Listings § 12.00(D)(1)(a).  When assessing a mental health impairment, the SSA recognizes the "[n]eed for longitudinal evidence" and that "it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish [the claimant's] impairment severity."  *Id.* at § 12.00(D)(2).

---

[3] Otwell advances another argument that she believes requires reversal of the Commissioner's decision. ECF No. 10-1 at 20-25. However, because the Court disposes of this matter based on the ALJ's failure to develop the record, that argument need not be reached.

5

Remand is warranted if the ALJ fails to fulfill his duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5.

Here, Otwell's attorney submitted a pre-hearing memorandum to the ALJ that indicated that "despite diligent follow-up, we continue to wait for [Otwell]'s . . . psychiatric treatment records from Nancy Kells, CSWR." Tr. 243. The memorandum explained that Otwell suffered emotionally from the aftereffects of her breast cancer, multiple surgeries, and related complications. Tr. 245. As a result, she received mental health treatment from Ms. Kells, but Ms. Kells did not send her records despite "repeated requests." Tr. 245. Counsel asked the ALJ to subpoena those records if they were not received by the hearing date. *Id.*

At the hearing, Otwell's attorney reported that Ms. Kells had not turned over her records and asked the ALJ to intervene. Tr. 53-54. The ALJ indicated that he would send a request letter and, if Ms. Kells resisted, issue a subpoena. *Id.*

Despite the pre-hearing memorandum and the above exchange at Otwell's hearing, the record lacks any information from Ms. Kells or any indication that the ALJ attempted to obtain those records.[4] Thus, it is clear that the ALJ did not "make every reasonable effort" to ensure that a "complete medical history" existed.

The ALJ's decision discusses Otwell's mental health only at step two of the disability analysis, where he found that her adjustment disorder constituted a nonsevere impairment.[5] Tr.

---

[4] The Commissioner concedes that "there is no evidence in the record that the agency requested records or issued a subpoena to Ms. Kells." ECF No. 12-1 at 16.

[5] It was improper for the ALJ to ignore Otwell's adjustment disorder throughout the RFC analysis. When an ALJ assesses the RFC, he must consider all of the claimant's medically determinable impairments, including those that are nonsevere. *See* 20 C.F.R. § 404.1545(a)(2). Remand is required if the ALJ fails to account for the claimant's nonsevere impairments when determining the RFC. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012)

20-21. In making this finding, the ALJ indicated that he relied on the opinion of consultative psychologist Susan Santarpia, Ph.D. *Id.* (citing Tr. 555). He afforded great weight to Dr. Santarpia's opinion in part because it was "not contradicted by any of the medical evidence." Tr. 21. It is unclear to the Court how the ALJ could determine that no medical evidence contradicted Dr. Santarpia's opinion when he knew that all of the evidence—specifically the records from Ms. Kells—was not before him. Similarly, the ALJ also relied on the opinion of state agency review psychologist T. Bruni. Tr. 21 (citing Tr. 87). The ALJ indicated that Dr. Bruni "reviewed the record," but, as mentioned, the ALJ knew that the record was incomplete.

Records from Ms. Kells could have been particularly helpful in the ALJ's step two determination because, as an "other source,"[6] the information she provides "may be based on special knowledge" of Otwell and "provide insight into the severity of the impairment(s) and how it affects [her] ability to function." S.S.R. 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Otwell testified that she saw Ms. Kells for about one year, and thus it is likely that information from Ms. Kells could have helped the ALJ evaluate the severity of Otwell's impairments and how those impairments affect her ability to perform work-related functions. Tr. 55.

Accordingly, for the reasons stated above and in light of the ALJ's broad duty to develop the record, the Court finds that remand is required. *See, e.g.*, *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits.").

---

(summary order) ("[A]fter finding that [the claimant]'s mental impairment of depression does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere, . . . the ALJ determined [the claimant]'s RFC without accounting for any of the limitations arising from her mental impairment[.] Thus, the ALJ committed legal error.").

[6] "Other sources" include medical sources like social workers, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists. *See* 20 C.F.R. § 404.1513(a), (d) (effective Sept. 3, 2013 to Mar. 26, 2017); *see also* S.S.R. 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006).

Where, as here, "there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order." *Glast v. Astrue*, No. 11-CV-5814 SLT, 2013 WL 5532696, at *10 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 5, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court